MAINTENANCE, INC., et al., Appellants,

v.

ITT HARTFORD GROUP, INC., et al., Appellees.

No. 06–94–00046–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 19, 1994.

Decided Feb. 17, 1995.

Rehearing Overruled March 10, 1995.

---

Douglas W. Brady, Brady & Associates, P.C., Dallas, for appellants.

James M. Moody, III, Strasburger & Price, Dallas, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Maintenance, Inc. and others brought this suit against ITT Hartford Insurance Group, Inc. to recover damages caused by Hartford's alleged breach of a covenant of good faith and fair dealing and certain provisions of the Deceptive Trade Practices Act.[1] Maintenance had obtained workers' compensation insurance through the Texas Workers' Compensation Assigned Risk Pool, and it alleged that Hartford, as the servicing company for the pool, had settled workers' compensation claims too quickly and by paying too much, causing Maintenance's experience rating and insurance premiums to rise to an intolerable level and forcing it to cancel its coverage. The trial court rendered a take-nothing summary judgment against Maintenance on the bases that Hartford was not its insurer but only the serving company for the

---

1. Tex.Bus. & Com.Code Ann. § 17.41, et seq. (Ver-    non 1987 & Supp.1994).

pool, and that Texas did not recognize a cause of action against a workers' compensation insurer or its agent for paying workers' claims excessively or too quickly. Because we believe the trial court correctly rendered summary judgment, we affirm.

Maintenance is a group of nine companies providing janitorial services to building owners. Until 1990 it purchased workers' compensation insurance on its employees from private carriers. In 1990 it was forced to apply for its insurance through the assigned risk pool because it was no longer able to obtain voluntary coverage. The Pool appointed Hartford as the servicing company, and as required by statute, Hartford issued a policy to Maintenance on behalf of the Pool.

Maintenance alleged that Hartford's overly lenient handling and payment of workers' compensation claims caused the number of claims to rise by 70% and the amount of money paid on the claims to rise by 183% in one year. This experience rating caused Maintenance's premium modifiers to increase for the year 1991 to the point that it could not afford to purchase workers' compensation insurance for the years 1991 and thereafter. Maintenance contended that Hartford was the insurer in its policy, and that its affirmative and negligent acts violated its covenant of good faith and fair dealing, as well as certain provisions of the DTPA. Hartford filed a sworn denial that it was liable in the capacity in which it was sued. TEX.R.CIV.P. 93.

■ The trial court correctly concluded that Hartford was not the insurer. At the time this action arose, TEX.INS.CODE ANN. art. 5.76 governed the purchase of assigned risk workers' compensation insurance policies.[2] Among other things, the Act provided that an employer whose application for insurance had been rejected could apply to the assigned risk pool for coverage. On approval of the application for insurance the pool was required to designate one of its members as the servicing company to issue a policy to the applicant. The Act further provided:

> [T]he undertakings of such policy shall be entirely reinsured by all members of the pool, *and the liability of the member issuing said policy shall be limited to its liability as a reinsurer.*

TEX.INS.CODE ANN. art. 5.76(d)[3] (emphasis added). In other portions, the Act provided that the policy issued by the servicing company "evidences the insurance coverages *provided by the pool* to a rejected risk" and that "it shall be the *duty of the pool* to provide insurance" for the applicant. TEX.INS.CODE ANN. art. 5.76(a)(8),[4] art. 5.76(c)[5] (emphasis added).

By the explicit terms of the statute, the pool and not the servicing company is the insurer. The servicing company—in this case Hartford—is merely the agent to issue a policy for the pool, and the servicing company is not liable as an insurer, but only as a reinsurer. This conclusion is supported not only by the plain terms of the statute but is also confirmed, we think, by the language of the recent amendment to the statute. The amendment generally follows the plan set out in the former article, but it made some changes and added some consistent language that better defines the responsibilities of the pool and the servicing company. For example, the amendment provides that the servicing company need not be a member of the pool and need not even be an insurance company. *See* TEX.INS.CODE ANN. art. 5.76–2, § 4.08(a), (d) (Vernon Supp.1994). The fact that the servicing company is not even required to be an insurance company confirms the fact that the Legislature did not intend for it to be the insurer, but only the agent for the pool. The only case we have found involving this issue supports this conclusion. In *Farm Air Service v. Houston Fire &*

---

2. The Act was amended effective January 1, 1991. Act of December 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01, 1989 Tex.Gen.Laws 114. The current version is TEX.INS.CODE ANN. art. 5.76–2 (Vernon Supp.1994).

3. Act of May 24, 1983, 68th Leg., ch. 534, § 1, 1983 Tex.Gen.Laws 3117.

4. Act of May 24, 1983, 68th Leg., ch. 534, § 1, 1983 Tex.Gen.Laws 3115.

5. Act of May 17, 1985, 69th Leg., ch. 904, § 3, 1985 Tex.Gen.Laws 3031.

*Casualty Ins. Co.*, 309 S.W.2d 510 (Tex.Civ. App.—Austin 1958, no writ), the court held:

> The Binder issued by the Pool, and the Assigned Risk Pool Reinsurance Endorsement attached to the policies show that the contract [of insurance] is between [the insured] and the Pool. Appellee is the servicing carrier acting on behalf of, at the direction of and as a member of the Pool. .... Losses occurring under the policies are paid by the Pool out of its Fund in Austin.

Maintenance points to various places on the policy form issued by Hartford that designate Hartford as the insurer. It says these prove that Hartford is the insurer rather than a mere agent. Those provisions, however, are contradicted and superseded by other more specific provisions in the policy and the endorsements to the policy, all of which clearly indicate that the pool is the insurer and Hartford is only liable as a reinsurer.

■ In an insurance context, a duty of good faith and fair dealing is imposed on an insurance company to its insured when there is a special contract—normally an insurance policy—between them. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695 (Tex.1994). But when an insurance company breaches its duty of good faith and fair dealing in the handling and payment of claims, and if it has contracted with an agent to perform such claim handling services for it, only the company and not the agent is liable for the breach. *Natividad v. Alexsis, Inc., supra,* As Hartford here is the agent for claims servicing purposes and is not an insurer, it has no liability to Maintenance for breach of a covenant of good faith and fair dealing.

The employer, though, does have a remedy. The statute provides that an insured aggrieved by any act of the pool may appeal to the State Board of Insurance and obtain relief from any acts that are found to be improper. TEX.INS.CODE ANN. art. 5.76(j).[6]

■ Maintenance argues in its brief that Hartford, even if it is not the insurer, can be liable in its capacity as agent for its own negligence or violations of the Deceptive Trade Practices Act and the Insurance Code.

We agree that Hartford may be liable in its individual capacity for such torts or wrongs, if committed. And, although Maintenance's petition mainly seeks relief against Hartford in its alleged capacity as insurer, the pleading is broad enough to encompass a cause of action against Hartford for damages caused by Hartford's own acts in its individual or agent capacity that may have harmed Maintenance. An agent may be liable for its own acts of negligence or fraud committed in performing a contract for its principal if those negligent or fraudulent acts cause reasonably foreseeable harm to a third party. *Whitson Co. v. Bluff Creek Oil Co.*, 278 S.W.2d 339 (Tex.Civ.App.—Forth Worth 1955), *aff'd,* 156 Tex. 139, 293 S.W.2d 488 (1956). While Hartford owed no duty to Maintenance to perform the servicing contract with the Pool, it did owe a duty to avoid committing negligent or fraudulent acts in performing the contract that reasonably could have harmed Maintenance or any party other than the Pool.

The statute limits Hartford's liability as a member of the Pool to that of a reinsurer. We believe, however, that the limitation of liability applies only to liability on an insurance contract, and that it was not intended to shield Hartford from liability for ordinary torts or wrongs it may have committed against Maintenance apart from any breach of a covenant of good faith and fair dealing.

Maintenance also assigns as error the trial court's refusal to let it conduct additional discovery before the hearing was held on the motion for summary judgment. Because all of the dispositive issues were questions of law and the summary judgment evidence adequately presented the applicable law, the error, if any, in refusing to allow additional discovery was harmless.

Maintenance also says the trial court improperly sustained Hartford's objections to Charles MacKay's affidavit and erred in allowing Hartford to file additional summary judgment evidence one day before the hearing on the motion. Maintenance had produced MacKay's affidavit in support of its response to the motion for summary judg-

---

6. Act of May 24, 1983, 68th Leg., ch. 534, § 1, 1983 Tex.Gen.Laws 3120.

ment. The trial court struck paragraphs five and six of the affidavit. In those paragraphs MacKay gave his opinion and interpretations on how the assigned risk pool law operated. Those were legal conclusions, not facts, and the court properly disregarded them.

The summary judgment evidence Hartford filed one day before the hearing was in answer to evidence filed by Maintenance showing that Hartford collected premiums on the policy it issued for the pool. Hartford in turn presented the affidavit of Christie Ellison to prove the administrative rules and regulations governing the assigned risk pool and servicing companies acting for the pool. Those rules were relevant, and Maintenance does not contend that it was surprised or prejudiced in any way by the filing. We find no reversible error in this respect.

■ Lastly, Maintenance contends that if TEX.INS.CODE ANN. art. 5.76 deprives it of a cause of action against Hartford as an insurer, the statute violates the Texas Constitution's open courts provision. TEX. CONST. art. I, § 13 (open courts provision). Maintenance brings this constitutional attack for the first time on appeal. It did not call it to the attention of the trial court before summary judgment was rendered, either in its response to Hartford's motion for summary judgment or otherwise. Thus, the point cannot be considered here. *City of San Antonio v. Schautteet,* 706 S.W.2d 103 (Tex.1986); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). Maintenance did argue this ground in its motion for reconsideration and new trial *after rendition of the summary judgment,* and in its brief in response, but that was ineffectual. Grounds supporting or opposing summary judgment must be raised in the motion or written response to the motion before the trial court renders judgment. Raising grounds in a motion for new trial or in a brief will not suffice. *Burford v. Wilson,* 885 S.W.2d 253 (Tex. App.—Tyler 1994, n.w.h.).

As the summary judgment was proper on the basis that Hartford was not the insurer, it is not necessary that we address Hartford's cross-point contending that the court lacked jurisdiction.

As to all causes of action against Hartford as the insurer or for breach of a covenant of good faith and fair dealing, the take-nothing summary judgment is affirmed. The other claims against Hartford for wrongs committed as agent or in its individual capacity other than as an insurer are severed, and the judgment as to those claims is reversed and the causes are remanded to the trial court for trial.